**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN BUELSING,                                          Case No. 1:12-cv-85

       Plaintiff,                                      Spiegel, J.
                                                        Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff John Buelsing filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In February 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of October 3, 2008 due to physical and mental impairments.  (Tr. 174-183).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on March 24, 2011.  (Tr. 27-78).  A vocational expert, Vanessa Harris was also present and testified.  On April 7, 2011,  ALJ Deborah Smith denied Plaintiff's application in a written decision.  (Tr. 9-19).

The record on which the ALJ's decision was based reflects that Plaintiff was 45 years old on his alleged disability onset date, with a high school diploma.  (Tr. 18). Plaintiff had past relevant work as a caster, extruder operator, server, material handler, industrial truck  operator, and truck driver.  (Tr. 18).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, depression, a personality disorder, a pain disorder, and polysubstance abuse." (Tr. 11).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He should avoid climbing ladders, ropes and scaffolds and stairs.  He can occasionally stoop, kneel, crouch, crawl and should not work around unprotected heights.  Mentally, he is limited to work that does not involve high production quotas, no paid piece rate work, should only have superficial interaction with co-workers (no arbitration, negotiation, confrontation, supervision, nor should he be responsible for the safety and welfare of others).

(Tr. 14).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as garment sorter, binder, ticket counter and table worker.  (Tr. 19).

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) giving controlling weight to the opinion of the non-examining medical expert in formulating Plaintiff's RFC assessment; and 2) giving inadequate consideration to the Plaintiff's pain, credibility and subjective complaints.  Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error to be well-taken.

## II. Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal
quotation omitted). In conducting this review, the court should consider the record as a
whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence
supports the ALJ's denial of benefits, then that finding must be affirmed, even if
substantial evidence also exists in the record to support a finding of disability. *Felisky v.
Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion .
> . . . The substantial evidence standard presupposes that there is a 'zone
> of choice' within which the Secretary may proceed without interference
> from the courts. If the Secretary's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability
benefits, the Social Security Agency is guided by the following sequential benefits
analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial
gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's
impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's
impairments, singly or in combination, meet or equal a Listing in the Listing of
Impairments; at Step 4, the Commissioner determines whether or not the claimant can
still perform his or her past relevant work; and finally, at Step 5, if it is established that
claimant can no longer perform his past relevant work, the burden of proof shifts to the
agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

#### 1.  *The ALJ's RFC Assessment*

In challenging the ALJ's decision, Plaintiff first argues that the ALJ erred by giving controlling weight to the opinion of the non-examining medical expert, Dr. Goren. Dr. Goran reviewed the medical record and testified as a medical expert at the administrative hearing.  Dr. Goren, a member of the American Board of Psychiatry and Neurology, testified that Plaintiff has severe cervical and lumbar disc disease noting a history of three surgeries.[1]  Despite these impairments, Dr. Goren found that the record does not show that Plaintiff's back impairments cause deficits that meet or equal the requirements of Listing 1.04.

---

[1]  Plaintiff was injured at work in May 1999 while working as a truck driver.  He injured his back after falling off the top of his trailer.

Dr. Goren cited to post-operative notes from Plaintiff's treating surgeon, Dr. Bordon, who "found there were Waddell signs for motor exaggeration aggravation being present." (Tr. 56). He also noted that Dr. Bordon thought that Plaintiff's weakness may be caused by narcotics. (Tr. 56). Dr. Goren also noted the findings of Dr. Rath, a neurosurgeon, who saw no indication for surgery, nor a need for a walker or wheelchair. (Tr. 56). Dr. Goren noted "various MRIs were abnormal." *Id.* Dr. Goren further testified that if Plaintiff suffered listing level neurological deficits, his MRI results would have been severely abnormal and it was not. Dr. Goren also noted that Plaintiff did not have upper extremity weakness. Additionally, Dr. Goren found that the record indicated the Plaintiff's heart and thyroid issues had resolved. (Tr. 57). Dr. Goren further testified that the record indicates that Plaintiff has major depressive disorder, a personality disorder, and a pain disorder. (Tr. 57). Dr. Goren also found that Plaintiff had a substance abuse problem in the past which he failed to disclose to his mental health providers.

Based upon his review of the entire record, including Plaintiff's testimony, Dr. Goren testified that Plaintiff was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally; he should never climb ladders, ropes, scaffolds, or stairs; he could occasionally stoop, kneel, crouch, crawl, or work at unprotected heights. (Tr. 58-59). With respect to Plaintiff's mental impairments, Dr. Goren testified that Plaintiff should not have high production quotas, piece work, or assembly type work; should not be required to have personal interactions with coworkers, supervisors, and the general

public, confrontations, supervision of others, or looking out for the welfare of others.  (Tr. 59-60).  Dr. Goren further opined that Plaintiff may have only superficial contact with the general public.  (Tr. 59-60).

In evaluating the opinion evidence, the ALJ gave "the greatest weight" to Dr. Goren's assessment of Plaintiff's functional limitations.  (Tr. 18).  In so concluding, the ALJ determined that Dr. Goren's assessment was consistent with the evidence of record. (Tr. 18).  Plaintiff argues, however, that the ALJ improperly credited Dr. Goren's assessment because Dr. Goren did not point to any evidence of record to support his opinions.  (Doc. 10 at 16).  Plaintiff further contends that Dr. Goren was not qualified to present an opinion regarding Plaintiff's psychological limitations.

In weighing the opinion evidence, it is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  However, there are no treating source opinions in the record in this matter.  Thus, the administrative law judge "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant ..., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources...."). *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Social Security Ruling 96-9p also states that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96–6p, 1996 WL 374180, at *3.  It should also be noted that Dr. Goren testified that he is board certified in the fields of medicine relevant in this case, neurology and psychiatry.  20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  Thus, the testimony of a medical expert can constitute substantial evidence to support the ALJ's decision when the expert's opinion is detailed and consistent with other medical evidence in the record.  *Davis v. Chater*, No. 95–2335, 1996 WL 732298, at *2 (6th Cir. Dec. 19, 1996) and *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir.1989).

Here, the undersigned agrees that Dr. Goren's testimony does not indicate they he properly considered the entire record, and as a result, the ALJ's erred in relying on his testimony.  While Dr. Goren made specific citations to the evidence of record in support of his findings, he failed to address many findings that were inconsistent with his assessment.  Notably, Dr. Goren noted only a few of the 248 pages of medical records from Plaintiff's extensive treatment with Physicians Healthsource, where he saw Dr. Ruch and Dr. Martinez for treatment of the lumbar conditions that were cause by his 1999 work injury.  (See Tr. 299-435, 1003-1086, 1212-1241).

Dr. Goren also concluded that the record did not indicate any upper extremity weakness. However, as outlined by Plaintiff, in September 2008, Dr. Ruch reported that Mr. Buelsing reported increasing difficulty with fine motor movements, grip and weakness involving the right wrist. (Tr. 423). On physical examination, Dr. Ruch noted a 35% deficit in grip strength on the right versus left. *Id.* Dr. Ruch noted atrophy of the thenar eminent on the right hand. *Id.* He also noted some visual edema into the digits on the right hand. *Id.* On February 18, 2009, Plaintiff saw Daniel Webb, M.D., for a neurosurgical consultation. (Tr. 699-701). On physical examination, Dr. Webb noted muscle strength was 3/5 in the  left and right hip flexors, 3/5 in the knee extensors, 2/5 dorsi flexion, 2-3/5 plantar flexion, 4- in the left triceps, 4 in the right triceps, and 4+ in the hand intrinsics. (Tr. 700).

Additionally, a physical therapy evaluation summary dated February 15, 2010 reported a goal to improve bilateral shoulder forward flexion and external rotation strength to 4/5. (Tr. 744). Physical examination showed motor strength with forward flexion was 4- in the shoulders bilaterally. (Tr. 746). Motor strength with external rotation of the shoulders was 4- bilaterally Id. Motor strength with shoulder abduction was 4 bilaterally. *Id.* Hypertonicity was noted in the bilateral upper trapezius and bilateral posterior cervical paraspinals. *Id.*

In light of the discrepancies between the evidence of record and Dr. Goren's testimony, Dr. Goren's purported failure to properly considered the medical evidence from Plaintiff's treating sources, as  well the fact that Dr. Goren did not examine Plaintiff,

the undersigned finds that the ALJ erred in relying on Dr. Goren's testimony relating to Plaintiff's functional limitations based on his physical impairments.  As such, there is insufficient evidence in the record to support the ALJ's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).

Furthermore, Dr. Goren's testimony relating to Plaintiff's mental impairments is similarly flawed.  At the outset, it is noted that Plaintiff asserts that although Dr. Goren is a member of the American Board of Psychiatry and Neurology, there is no indication in the record that he studied or earned a degree in psychology or psychiatry.  As such Plaintiff contends that he was not qualified to render an opinion relating to Plaintiff's mental capabilities. The undersigned recognizes that Plaintiff's counsel did not object to Dr. Goren serving as a medical expert at that time.  See *Koller v. Astrue*, CIV.A. 2:10-284-DCR, 2011 WL 5301569 (E.D. Ky. Nov. 3, 2011) (citing *Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1222 n. 15 (C.D. Calif. 2005) ("If a party fails to object to an expert's qualifications at the hearing, he waives the right to challenge them.").

In any event, the undersigned agrees that Dr. Goren's testimony is not substantially supported.  As noted by Plaintiff, Dr. Goren was the only medical source to diagnose Plaintiff with a pain disorder.  In addition, Plaintiff maintains that Dr. Goren's evaluation of Plaintiff's impairments in relation to Listing 12.07 was in error as the record contains substantial objective evidence of physical impairments which account for Plaintiff's complaints of pain.  The undersigned agrees.  Notably, in response to a questioning from Plaintiff counsel, Dr. Goren stated:  "as I read the whole record, Dr. Bordon [a neurosurgeon] didn't treat the whole record.  The whole record to me reads

like problems with a somatoform disorder and it is highly unlikely that an operation of any form would help his somatoform disorder." (Tr. 63). However, as noted above, Dr. Goren's testimony does not make substantial specific references to the record, indicating a comprehensive review. Dr. Goren does not reference the findings from Dr. Manges, Plaintiff's treating psychologist, nor the state agency psychologists who performed consultative evaluations of Plaintiff in March and May of 2009. (See Tr. 524-529, 559-60, 1140-1144, 1145-1149, 1150).

It appears that Dr. Goren improperly focused on Plaintiff's alleged pain disorder when evaluating Plaintiff's mental limitations. Notably, such a finding is inconsistent with the record as a whole because no other medical source diagnosed Plaintiff with a pain disorder. Accordingly, the ALJ's reliance on Dr. Goren's testimony relating to Plaintiff's mental impairments cannot be affirmed on the record now before the Court. This matter should be remanded for further development of the record regarding the Plaintiff's physical and mental impairments. On remand, the Commissioner shall obtain consultative examinations and functional assessments of Plaintiff's physical and mental abilities in order to properly determine Plaintiff's RFC, and the ALJ shall properly weigh the medical evidence of record.

   2. *Plaintiff's Credibility*

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment failed to comply with the requirements set forth in SSR 96-7p. The undersigned agrees.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted).  In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir. 1985).  In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id*. The ALJ's credibility decision must also include consideration of the following factors:  1)

the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Here, the ALJ determined that Plaintiff's testimony and complaints of disabling pain were not fully credible in light of the object evidence, Plaintiff's reported activities and inconsistent statements throughout the record.  The ALJ found that "the claimant exhibits little in the way of positive signs and findings to show significant physical

conditions." (Tr. 17).  The ALJ also noted Plaintiff's inconsistent statements relating to his use of marijuana and alcohol and his purported overuse of narcotic medication.  (Tr. 16).

In light of the ALJ's failure to properly evaluate the medical evidence of record in formulating Plaintiff's RFC, the ALJ's determination that Plaintiff's subjective complaints were not supported by the objective evidence is not substantially supported.  Thus, because  the ALJ must reconsider the opinion evidence of record, it is also necessary for the ALJ's credibility assessment to be reconsidered on remand. Notably, the ALJ's findings may change after the medical evidence is reevaluated on remand, making it appropriate to reconsider his credibility finding.

### III.  Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.  All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date.  *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2.  On remand, the ALJ be instructed to: 1) obtain consultative examinations and functional assessments of Plaintiff's mental physical abilities in order to properly determine plaintiff's RFC; 2) properly weigh the medical evidence of record and give specific reasons for the weight assigned to each source; and 3) properly consider Plaintiff's credibility and complaints of pain, and provide a clear explanation for the conclusions reached therein; and

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

> */s Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN BUELSING,                                              Case No. 1:12-cv-85

        Plaintiff,                                      Spiegel, J.
                                                            Bowman, M.J.
      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

-16-